UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
——————————————————————————

FRED ADKINS,

                     Petitioner,

           V.

GARY GREENE,

                  Respondent.

——————————————————————————

**REPORT AND
RECOMMENDATION**

05-CV-522
(FJS /VEB)

## I. INTRODUCTION

Petitioner Fred Adkins, acting *pro se*, commenced this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2254.  Petitioner is an inmate at the Clinton Correctional Facility.  In 2000, he was convicted in a New York State court of two counts of attempted robbery in the first degree, two counts of criminal use of a firearm in the second degree, reckless endangerment in the first degree, and criminal possession of a weapon in the second degree.  Petitioner contends that his conviction was imposed in violation of his constitutional rights and should therefore be vacated.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is presently before this Court for a report and recommendation. (Docket No. 34).

## II. BACKGROUND

**A.      Facts**

The following factual summary is derived from the state court records.  During the

evening hours of November 27, 1999, while at an Econo Lodge motel in Syracuse, New York, Petitioner attempted to rob, at gunpoint, Calvin Moore, a long time acquaintance. (T at 283-85, 365-66).[1]  Following a struggle, Moore successfully kept Petitioner out of his motel room and closed the door. (T at 284-85). Thereafter, a shot was fired into the room from outside and Petitioner demanded that Moore open the door. Moore refused and stated that he was going to call the police. Moore called the front desk, and a few minutes later, opened the door, but Petitioner had departed. (T at 285-86, 325, 372-74).

The police investigated the scene and took a description and statement from Moore.[2]  Shortly thereafter, the police located and arrested Petitioner. (T at 292).

On May 17, 2000, an Onondaga County Grand Jury returned Indictment Number 00-0461, which charged Petitioner with two counts of Attempted Robbery in the First Degree, in violation of New York Penal Law ("NYPL") §110.00/160.15(2) and (4)[3]; two counts of Criminal Use of a Firearm in the Second Degree, in violation of NYPL §265.08(1),(2); Reckless Endangerment in the First Degree, in violation of NYPL §120.25; and Criminal Possession of a Weapon in the Second Degree, in violation of NYPL §265.03(2).

**B.     State Trial Court Proceedings**

The Honorable Timothy W. Higgins, Onondaga County Court Judge, presided over Petitioner's trial proceedings. The trial began on December 5, 2000 and concluded on December 8, 2000. Petitioner was represented by Anthony Belletier, Esq. At the

---

[1]References preceded by "T" are to the transcript pages of Petitioner's trial.

[2]Moore was accompanied by his brother and girlfriend, Sylvanna Mitrevska, who also identified Petitioner.

[3]Unless otherwise indicated, all references to the NYPL are to McKinney 1998.

conclusion of the trial, the jury found Petitioner guilty of two counts of Attempted Robbery in the First Degree, two counts of Criminal Use of a Firearm in the Second Degree, Reckless Endangerment in the First Degree, and Criminal Possession of a Weapon in the Second Degree.  (T at 556).  On March 2, 2001, Petitioner was sentenced as a persistent felony offender to fifteen (15) years to life in prison on all counts, with the sentences to run concurrently.  (S at 26, 29).[4]

## C.    State Appellate Proceedings

### 1.    Direct Appeal

Petitioner, represented by Philip Rothschild, Esq., appealed his conviction to the Appellate Division, Fourth Department, of the New York State Supreme Court.  Petitioner asserted before the Appellate Division: (1) that the evidence was insufficient to establish Petitioner's guilt; (2) that his right to a "speedy trial[5]" under New York law was violated; and (3) Petitioner's sentence as a persistent felony offender[6] was illegal because the trial court did not comply with Criminal Procedure Law §400.20.

In a decision issued on October 1, 2002, the Appellate Division unanimously affirmed Petitioner's conviction.  People v. Adkins, 298 A.D.2d 991 (4th Dep't 2002).  Petitioner's application for leave to appeal to the Court of Appeals was denied on December 5, 2002.

---

[4]References preceded by "S" are to the transcript pages of Petitioner's sentencing proceedings.

[5]Criminal Procedure Law §30.30 provides that the People are required to be ready for trial within six months of the commencement of a felony action.

[6]The Court notes that Petitioner's appellate brief contests his sentence as a "persistent *violent* felony offender." (Petitioner's Brief before the Appellate Division at 28) (emphasis added).  However, a review of the sentencing transcript reveals that the trial court found Petitioner to be solely a persistent felony offender.  (S at 26). This distinction is of significance to this Court's later analysis of Petitioner's claim with respect to his sentence as a persistent felony offender as discussed below.

People v.Adkins, 99 N.Y.2d 554 (2002).

**2.      Criminal Procedure Law §440.10 and §440.20 Motions**

On August 4, 2003, Petitioner brought a motion pursuant to Criminal Procedure Law ("CPL") §§ 440.10 and 440.20 to vacate the judgment of conviction and set aside his sentence. In support of that motion, Petitioner claimed that (1) his trial counsel was ineffective;[7] (2) he was absent from the Sandoval hearing; (3) there was eyewitness testimony error; (4) the court improperly failed to reopen the Wade hearing; (5) there was an inadequate jury instruction on identification; (6) there was improper comments made by the prosecutor in summation; and (7) he was improperly adjudicated as a persistent felony offender because his previous forgery conviction had been reversed.

On December 2, 2003, Onondaga County Court denied Petitioner's motion pursuant to CPL § 440.10 (2)(a), finding that Petitioner's persistent felony offender claim was procedurally barred because it had been rejected on direct appeal.  The court also denied Petitioner's other claims pursuant to § 440.10(2)(c) because there were sufficient facts on the record to raise his claims on direct appeal, but Petitioner failed to raise them.(Docket No. 1 Exhibits).  On July 9, 2004, the Appellate Division, Fourth Department, denied Petitioner's application for leave to appeal.  (Id.).

**3.      Writ of Error *Coram Nobis***

On July 6, 2004, Petitioner, proceeding *pro se*, brought a motion for a writ of error

---

[7]Specifically, Petitioner contended that his trial counsel was ineffective because he failed (1) obtain affidavits from two recanting witnesses; (2) argue that an eight-day period was chargeable to the People in support of his speedy trial §CPL 30.30 motion; (3) call Edwin Montanez as an alibi witness; (4) request an alibi charge as part of the court's jury instructions; (5) object to the People's impeachment of their own witness; and (6) object to the court's reliance on a felony conviction that had been reversed in determining that Petitioner was a persistent felony offender.

4

*coram nobis* claiming ineffective assistance of appellate counsel. The Appellate Division, Fourth Department denied his motion by order dated November 19, 2004. People v. Adkins, 12 A.D.3d 1205 (4th Dep't 2004). Petitioner's application for leave to appeal to the Court of Appeals was denied on February 22, 2005. People v. Adkins, 4 N.Y.3d 795 (2005).

## D.  Federal Habeas Corpus Proceedings

Petitioner, proceeding *pro se*, commenced this action on April 12, 2005, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1). In his Petition, Petitioner asserts sixteen (16) claims for habeas relief: (1) he was denied effective assistance of trial counsel for failure to properly move for dismissal of the indictment under CPL §30.30; (2) he was improperly denied his right to be present at the Sandoval hearing without any objection from his trial counsel; (3) he was denied effective assistance of counsel when trial counsel failed to object to police officer's bolstering testimony; (4) he was denied a fair trial when the trial court failed to follow the "Law of the Case" rule; (5) the trial court improperly failed to reopen the Wade hearing; (6) trial counsel was ineffective for refusing to call Edwin Montanez as an alibi witness; (7) trial counsel was ineffective because he failed to request an alibi jury instruction and failed to object to the charge given; (8) trial counsel's failure to request a jury instruction with respect to identification evidence amounted to ineffective assistance of counsel; (9) trial counsel improperly failed to object during sentencing to the use of his 1994 conviction for forgery to determine his status as a persistent felony offender; (10) appellate counsel's failure to raise issues related to People

5

v. Trowbridge[8] amounted to ineffective assistance of appellate counsel; (11) appellate counsel erred in how he presented Petitioner's speedy trial claims; (12) appellate counsel was ineffective because he failed to raise CPL §710.30 issues; (13) appellate counsel improperly failed to raise issues related to the "Law of the Case" rule with respect to Sylvanna Mitrevska's out of court identification; (14) appellate counsel's failure to raise issues related to his right to call witnesses amounted to ineffective assistance of counsel; (15) appellate counsel's was ineffective because he failed to raise an Apprendi[9] claim on appeal; and (16) the sentencing court violated his rights when it failed to place its reasons for determining Petitioner was a persistent felony offender on the record. (Docket No. 1 at 7A-7C).

On October 14, 2005, Respondent filed a Response and memorandum of law in opposition. (Docket Nos. 11, 12). In his response, Respondent asserted that Petitioner had failed to exhaust his remedies with respect to his Apprendi claim. (Docket No. 11 at 12). Thereafter, Petitioner requested that these proceedings be stayed in order for him to exhaust his remedies with respect to his Apprendi claim. (Docket No. 15).

Respondent did not object to the stay request and on March 27, 2006, the Honorable Frederick J. Scullin, Jr., United States District Court Judge, stayed these proceedings to allow Petitioner to exhaust his remedies. (Docket No. 17). Petitioner then filed a motion in state court pursuant to CPL §440.20 to set aside his sentence, asserting that it violated

---

[8]305 N.Y. 471 (1953)(The New York Court of Appeals held that a witness who heard an eyewitness make an identification of a defendant cannot testify as to what he or she heard under the theory that such testimony would improperly bolster the eyewitness testimony.).

[9]Apprendi v. New Jersey, 530 U.S. 466 (2000). In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.

Apprendi.

On June 14, 2006, County Court denied Petitioner's motion.  (Docket No. 32 at 48). On January 22, 2007, the Appellate Division, Fourth Department denied permission to appeal the County Court's decision.  (Id. at 50).  Thereafter, the Court of Appeals denied Petitioner's application to appeal.  (Id. at 51).  On May 30, 2007, the Honorable David E. Peebles, United States Magistrate Judge, lifted the stay in this case and Petitioner filed a Memorandum of Law in support of his petition on June 1, 2007.  (Docket No. 32).

For the reasons that follow, this Court recommends that the Petition for habeas corpus relief be DISMISSED.

## III. DISCUSSION

### A.    Federal Habeas Corpus Standard

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits."  28 U.S.C. § 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001).  The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim."  Sellan, 261 F.3d at 313 (quotation omitted).  The Second Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to constitute an "adjudication on the merits" for purposes of AEDPA.  Id. at 312-313.

Specifically, AEDPA requires that where a state court has adjudicated the merits of

a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714, 715 n. 1 (2d Cir. 1997), and AEDPA requires a Petitioner to rebut that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002). A presumption of correctness applies to findings by both state trial and appellate courts. Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law. A state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." Id.

A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." Id.

Under this standard, "a federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

**B.     Petitioner's Claims**

As set forth above, Petitioner asserts sixteen (16) claims in support of his request for habeas relief.  This Court will address each claim in turn.

**1.     Ineffective Assistance of Trial Counsel**

Seven of Petitioner's claims for habeas relief relate to ineffective assistance of trial counsel and will therefore be discussed together.  As set forth above, Petitioner asserts that his trial counsel was ineffective based upon his:(a) failure to properly move for dismissal of the indictment under CPL §30.30; (b) failure to object when he was denied his right to be present at the Sandoval hearing; (c) failure to object to police officer's bolstering testimony; (d) refusal to call Edwin Montanez as an alibi witness; (e) failure to request an alibi jury instruction and failure to object to the charge given; (f) failure to request the court to instruct the jury on identification evidence; and (g) failure to object during sentencing to the use of his 1994 conviction for forgery, that had been overturned, to determine his status as a

9

persistent felony offender.[10]

Respondent argues that these claims are procedurally barred because Petitioner raised these claims in his CPL §440.10 motion and the court denied them pursuant to § 440.10(2)(c), which is an independent and adequate state procedural bar.  (Docket No. 11 at 14).

The Supreme Court has held that federal courts shall "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (citations omitted). "This rule applies whether the state law ground is substantive or procedural." Id. (citations omitted).

The independent and adequate state ground doctrine may bar federal habeas review "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement" for in such cases "the state judgment rests on independent and adequate state procedural grounds." Id. (citing, inter alia, Wainwright v. Sykes, 433 U.S. 72, 81, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)).

Thus, an adequate and independent finding of procedural default precludes federal habeas review of the federal claim, unless the habeas petitioner can show "cause" for the default and "prejudice" attributable thereto, Murray v. Carrier, 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), or demonstrate that the failure to consider the federal claim on habeas will result in a "fundamental miscarriage of justice.' " Id. at 495, 106 S.Ct. 2639

---

[10]These ineffective assistance of trial counsel claims constitute Grounds One, Two, Three, Six, Seven, Eight and Nine of the Petition.  (Docket No. 1).

(quoting <u>Engle v. Isaac</u>, 456 U.S. 107, 135, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)).

In the present case, the state courts denied Petitioner's ineffective assistance of trial counsel claims pursuant to CPL § 440.10(2)(c), which provides for denial of a § 440 motion when "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted [appeal], no such appellate review or determination occurred owing to the defendant's unjustifiable failure . . . to raise such ground or issue" on his direct appeal.   The Second Circuit has determined that a denial based upon CPL § 440.10 (2) constitutes an adequate and independent state law ground, which bars habeas corpus relief. <u>See</u> <u>Sweet v. Bennett</u>, 353 F.3d 135, 141 (2d Cir. 2003); <u>Levine v. Commissioner of Correctional Services</u>, 44 F.3d 121, 126 (2d Cir.1995).

As such, Petitioner's ineffective assistance of trial counsel claims are procedurally barred. <u>See</u> <u>Maisonet v. Conway</u>, No. CV-04-2860, 2007 WL 2027323, at *3-*4 (E.D.N.Y. July 10, 2007) ("[A]lthough the evidence of trial counsel's allegedly deficient performance was available on the trial record, Petitioner failed to raise the claim on direct appeal and it is accordingly barred."); <u>Taylor v. Kuhlmann</u>, 36 F. Supp.2d 534, 545 n.9 (E.D.N.Y.1999) (noting that "where the claimed instances of trial counsel error are matters to which the record is already clear, the claim can be reviewed by the appellate court and should be raised on direct appeal, . . . and the failure to do so is a procedural default") (internal citations omitted); <u>see</u> <u>also</u> <u>Garcia v. Scully</u>, 907 F. Supp. 700, 706 (S.D.N.Y.1995).

Given that the state court's finding in this regard had an adequate basis under state law, Petitioner may overcome the procedural bar only by showing either (1) cause for the default and prejudice or (2) a fundamental miscarriage of justice. <u>Coleman</u>, 501 U.S. at 750.

The alleged ineffectiveness of appellate counsel could arguably constitute "cause" for the procedural default in that the default was a result of appellate counsel's decision not to raise the claims on direct appeal.[11]  However, for the reasons discussed below, the claims themselves are lacking in merit and, as such, appellate counsel's decision not to raise the claims did not constitute ineffective assistance of counsel.  See Brunson v. Tracy, 378 F. Supp.2d 100, 113 (E.D.N.Y. 2005) ("Appellate counsel's decision was therefore simply not ineffective, but prudent, as the raising of this frivolous argument may well have distracted from other, more meritorious issues urged by appellate counsel.");  Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir.1994) ("[T]he failure to raise nonmeritorious issues does not constitute ineffective assistance.").  For the same reason, Petitioner cannot establish that he was prejudiced as a result of the procedural default.[12]

In light of the potential argument regarding the alleged ineffectiveness of appellate counsel for failing to raise the ineffective assistance of trial counsel claims, this Court will discuss the merits of those claims.

In order to prevail on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct.

---

[11]While Petitioner does not specifically assert the alleged ineffectiveness of his appellate counsel as cause for the procedural default, this Court is mindful of its obligations with respect to pro se pleadings and will accordingly consider such an argument as though it had been made.

[12] Additionally, Petitioner cannot establish that a fundamental miscarriage of justice would occur absent federal court review of his procedurally barred claims.  In order to show a "fundamental miscarriage of justice," Harris v. Reed, 489 U.S. 255, 262 109 S.Ct. 1038, 103 L.Ed.2d 308, 109 S.Ct. 1038 (1989), a petitioner must demonstrate "actual innocence." in the form of newly adduced evidence.  Calderon v. Thompson, 523 U.S. 538, 559, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998); accord Washington v. James, 996 F.2d 1442, 1447 (2d Cir.1993), cert. denied, 510 U.S. 1078, 114 S.Ct. 895, 127 L.Ed.2d 87 (1994); McCleskey v. Zant, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

    Petitioner has not produced any "new evidence" to support a claim that he is actually innocent, as is required to establish that denial of the claim as procedurally barred would result in a fundamental miscarriage of justice.  See Schlup v. Delo, 513 U.S. 298, 327, 115 S.Ct. 851 (1995).

2052, 80 L.Ed.2d 674 (1984), a habeas petitioner must satisfy a two-part test.  First, a petitioner must demonstrate that counsel's performance was so deficient that counsel was not functioning as "counsel" within the meaning of the Sixth Amendment to the Constitution.  Id. at 688, 104 S.Ct. 2052.  In other words, a petitioner must show that his attorney's performance "fell below an objective standard of reasonableness." Id.  Second, a petitioner must show that counsel's deficient performance prejudiced him. Id. at 694, 104 S.Ct. 2052.

The issue of prejudice need not be addressed, however, if a petitioner is unable to demonstrate first that the performance of counsel was inadequate. "[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697, 104 S.Ct. 2052.

### a.   Dismissal of the Indictment under CPL §30.30

Petitioner asserts that his trial attorney failed to properly move for dismissal of the indictment pursuant to CPL §30.30, which is commonly called the "Speedy Trial" statute.  Petitioner does not argue that his speedy trial rights under the Sixth Amendment were violated.[13]  Rather, Petitioner bases his claim on an alleged violation of Section 30.30 of the New York Criminal Procedure Law.

Section 30.30 is a statutory time frame in which the prosecution must be ready for trial.  Specifically, it provides that the prosecution must be ready for trial within six (6) months of the "commencement of a criminal action wherein a defendant is accused of one or more offenses, at least one of which is a felony." CPL §30.30(1)(a).

---

[13]In any event, the approximately seven (7) month delay between indictment and trial would not, by itself, give rise to a constitutional speedy trial claim.  Moreover, such a claim would require a showing of actual prejudice caused by the delay, which is lacking here. See Rodriguez v. Collins, No. 04-CV-1137, 2008 WL 1851775, at *9 (N.D.N.Y. Apr. 28, 2008) (collecting cases).

In this case, Petitioner was charged by the filing of a felony complaint on November 28, 1999.  Slightly less than six (6) months later, on May 17, 2000, the indictment was issued and the prosecution announced their readiness for trial. Thereafter, his  arraignment was scheduled for May 25, 2000, however, the prosecution failed to produce Petitioner and the arraignment[14] was rescheduled for June 2, 2000.  Petitioner's trial attorney made a motion pursuant to CPL §30.30, asserting that the period from May 25, 2000 through June 2, 2000 should be chargeable to the prosecution due to their failure to produce Petitioner at the arraignment.[15]  The court agreed and added that period to the calculation of time for speedy trial purposes.  However, the Court ultimately denied the motion to dismiss the indictment because even including the May 25 to June 2 period, the speedy trial requirement was satisfied. See (Appendix at A64-A67).

Petitioner asserts that his trial attorney failed to argue that the eight (8) days, from May 17, 2000 through May 25, 2000, should also have been charged to the prosecution as a "post-indictment delay."  (Docket No. 32 at 12-13).  Petitioner asserts that if his trial counsel made this argument, his indictment would have been dismissed. (Id. at 16).

Although Petitioner did not raise this "speedy trial" issue on direct appeal in terms of ineffective assistance of trial counsel, he did argue that his right to a speedy trial had been violated. (Appellant's Brief at 23-27).  The People noted that as of May 25, 2000, Petitioner was in custody pursuant to a parole violation, and that Petitioner's incarceration based on

---

[14]According to the People's brief before the Appellate Division, on May 25, 2000, Petitioner was in custody in a state correctional facility due to a parole violation and the prosecution failed to have him transported for the arraignment.

[15]Petitioner's CPL §30.30 motion can be found in the Appendix before the Appellate Division, Fourth Department on direct appeal in this case at A59-A63.

a parole detainer should be excluded from a CPL §30.30 calculation.  See People v. Cartledge, 147 AD2d 917 (4th Dep't 1989).

In any event, the Appellate Division found no violation of Petitioner's speedy trial rights under New York law, stating that "'where it is possible for the defendant to be arraigned and the trial to go forward within the six-month period, a pre-arraignment statement of readiness can be valid.  Thus, a statement of readiness made contemporaneously with the filing of the indictment can be effective to stop the 'speedy trial' clock if the indictment is filed at least two days before the CPL 30.30 period ends ....  Moreover, ... there is no requirement that a defendant be present in order to establish readiness for trial" People v. Adkins, 298 A.D.2d 991 (quoting People v Carter, 91 NY2d 795, 798).

In other words, the Appellate Division concluded that the speedy trial clock stopped when the prosecution declared its readiness on May 17, 2000, which was prior to  the expiration of the six-month statutory deadline.  Accordingly, the inclusion of any time after that declaration, including the time period between May 25th and June 2nd, would not have resulted in a dismissal of the indictment, as argued by Petitioner.  Trial counsel's decision not to raise such an argument cannot therefore be considered ineffective assistance of counsel.  See Maxwell v. Greiner, No. 04-CV-4477, 2008 WL 2039528, at *8 (E.D.N.Y. May 12, 2008) ("Therefore, any motion made by his counsel on speedy trial grounds would have failed and, accordingly, Maxwell cannot sustain a claim of ineffective assistance of counsel on this basis."); Jones v. Spitzer, No. 01 Civ. 9754, 2003 WL 1563780, at *18 (S.D.N.Y. Mar. 26, 2003) ("Obviously, the failure to make a meritless section 30.30 motion does not amount to ineffective assistance.").

15

###### b.    Sandoval Hearing

In Petitioner's second ground for habeas relief, he asserts that his trial counsel was ineffective for allowing the trial court to conduct a Sandoval hearing[16] in his absence.  Under New York law, a criminal defendant has a right to be present at a Sandoval hearing and it is reversible error for a court to conduct the hearing in his absence.  People v. Monclavo, 87 N.Y.2d 1029 (1996).

However, Petitioner admits in his memorandum of law that the "record is unclear whether Petitioner was present at the hearing." (Docket No. 32 at 18).  Petitioner explains that the court reporter did not provide a copy of the beginning of the Sandoval hearing where the parties stated their appearances for the record.

However, it is evident from the transcript, and Petitioner does not dispute, that Petitioner was present in the courtroom immediately following the Sandoval hearing, as the court specifically addressed him on the record. See (Docket No. 32 at 19 and Minutes of December 5, 2000 at 11-13). In addition, the following exchange between the court and Petitioner, which occurred after the Sandoval hearing, suggests that Petitioner was present in the courtroom throughout the hearing: "Mr. Adkins, your attorney has handed me a waiver of right to be present at bench signed by you this morning and is this something you've done voluntarily?" (Id.).  Petitioner stated that he had signed it voluntarily.

In any event, Petitioner does not affirmatively deny that he was present during the hearing, just that the record cannot confirm that he was. (Docket No. 32 at 18-20).

---

[16]A hearing is held pursuant to People v. Sandoval, 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974), to determine the extent to which Petitioner, should he decide to testify, could be cross-examined regarding prior crimes and bad acts bearing on his credibility, veracity, or honesty.

Accordingly, Petitioner is unable to establish the factual basis required to even arguably support his claim and the claim should therefore be denied.

### c.    Bolstering Testimony

In Petitioner's third claim for habeas relief, he asserts that his trial counsel was ineffective when he failed to object to the bolstering testimony of three police officers. Specifically, Petitioner claims that these officers testified to having heard the witnesses making an identification of Petitioner, in violation of People v.  Trowbridge, 305 N.Y. 471 (1953).  In Trowbridge, the Court of Appeals held that a witness who heard an eyewitness make an identification of a defendant cannot testify as to what he or she heard such an indentification because that would result in improper bolstering of the eyewitness identification.

Officer Anthony Colavita, Officer Thomas Hester, Sergeant Roger McReynolds testified that they arranged a "show up" identification for Moore, the victim, and that Moore identified Petitioner.  (T at 271, 337, 349).  Petitioner asserts that this testimony improperly bolstered the eyewitness identification and was therefore improper under Trowbridge.

However, it is well-established that claims based upon alleged violations of the Trowbridge bolstering rule are not cognizable on habeas review.  See Carr v. Fischer, 283 F.Supp.2d 816, 836-37 (E.D.N.Y.2003) ("Even if the challenged testimony could be considered 'bolstering' testimony that the trial court should have precluded, such an error does not constitute a violation of the Federal Constitution."); Lebron v. Sanders, No. 02 Civ. 6327, 2008 WL 793590, at *20 (S.D.N.Y. Mar. 25, 2008);

Moreover, even assuming *arguendo* that his trial counsel should have objected to the allegedly improper bolstering, Petitioner cannot demonstrate any prejudice arising from that

failure.  The eyewitnesses who testified in this case all knew Petitioner for several years prior to the crime, including Calvin Moore.  As such, there is no reasonable probability that the jury's decision was motivated or affected in any material respect by the alleged "bolstering."  As such, Petitioner's third ground for habeas relief should also be DENIED.

### d.  Alibi Witness

Petitioner asserts that trial counsel was ineffective for failing to call Edwin Montanez as an alibi witness.  Petitioner claims that Montanez would have offered testimony that Petitioner was in another location at the time of the crime.

"The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." United States v. Neresian, 824 F.2d 1294, 1321 (2d Cir.1987). Because such decisions "fall squarely within the ambit of trial strategy," they will not constitute a basis for an ineffective assistance claim provided that they are "reasonably made." Id.; accord United States v. Eisen, 974 F.2d 246, 265 (2d Cir.1992).

Petitioner's trial counsel explained on the record that he refused to call Montanez, as a matter of trial strategy, even though Petitioner wanted him to do so.  (T at 508-09).  The testimony at trial from the prosecution's witnesses identified Montanez as being at the Econo Lodge with Petitioner at the time of the crime and then driving Petitioner away afterwards.  As such, trial counsel's decision not to call Montanez can be justified by the concern that his testimony would have been of questionable credibility.  See Osorio v. Conway, 496 F.Supp.2d 285, 305 (S.D.N.Y. 2007) (noting that trial counsel's decision not to call alibi witness was justified because, inter alia, "counsel was concerned that a jury would not find [the witness] credible"); Perkins v. Commissioner of Correctional Services,

18

No. 04-CV-2307, 2005 WL 3591722, at *5 (E.D.N.Y. Dec. 30, 2005)("Thus, unless alibi witnesses are strong and corroborative proofs support their assertions, experienced defense counsel may eschew potentials of alibi proofs for fear that juries may assess relative credibility rather than reasonable doubt.").

Additionally, given the evidence presented by the prosecution, and particularly the eyewitness identifications offered by witnesses who knew Petitioner well. Petitioner cannot demonstrate that there is any reasonable possibility that the jury would have acquitted him if Montaneaz had testified.  Accordingly, Petitioner cannot obtain habeas relief on this basis. Johnson v. Giambruno, No. 04 Civ. 9094, 2006 WL 1132916, 8 (S.D.N.Y. Apr. 27, 2006). ("In any event, given the weight of the evidence against him, it seems unlikely that the outcome would have been different if the alleged alibi witnesses had testified.").

### e.    Failure to Request Alibi Jury Instruction

Petitioner also asserts that his trial attorney improperly failed to request an "alibi instrution [sic] or object to the charge given."  (Docket No. 1 at 7B).

However, in as much as Petitioner's trial counsel stated on the record he was not going to call the alibi witness, there would have been no reason for him to request an alibi jury instruction.

Moreover, courts in New York have held that the failure to request an alibi charge can be a reasonable strategic decision, where the alleged alibi is weak. See, e.g., People v. Scott, 283 A.D.2d 525, 727 N.Y.S.2d 442 (2d Dept.2001) ("The decision not to request an alibi charge was reasonable in view of the weakness of the defendant's alleged alibi, which consisted solely of his own testimony that he was alone at home at the time of the crime."); People v. Coleman, 283 A.D.2d 321, 724 N.Y.S.2d 856 (1st Dept.2001) ("Counsel's failure

to request an alibi charge or to emphasize the alibi issue in summation can be readily explained by the weakness of the alibi testimony."); People v. Frye, 210 A.D.2d 503, 620 N.Y.S.2d 993 (1st Dept.1994) ("[I]t is clear from the record that the defendant's alibi was seriously undermined by evidence adduced at trial, and thus defense counsel's decision not to request an alibi charge may have been a strategic decision.").

In this case, Petitioner's trial counsel did not request an alibi charge because there was no alibi testimony or evidence presented to the jury. See (T at 473-479).  As discussed above, the record indicates that the decision not to present the alibi defense urged by Petitioner (*i.e.* the testimony of Montanez) was a strategic decision motivated by concerns about the credibility of the alibi.  Further, given the evidence presented at trial, Petitioner has not demonstrated that there is a reasonable likelihood that the jury would have reached a different result even if his attorney had presented the purported alibi witness and requested an alibi witness charge.

As such, Petitioner has failed to establish that his trial counsel was ineffective for not requesting an alibi jury instruction.  See  Parreno v. Annetts, 2006 WL 689511, at * 13 (S.D.N.Y. March 20, 2006) (rejecting ineffective assistance of counsel claim based on failure to request alibi instruction where petitioner not prejudiced; petitioner's alibi testimony was weak and the proof of guilt was strong).   Accordingly, this claim for habeas relief should also be DISMISSED.

### f.    Identification Instruction

Petitioner asserts that his trial counsel was ineffective for failing to request a specific jury instruction on the issue of identification.  The trial court provided general instructions concerning the methods the jury should employ in evaluating the credibility of the witnesses.

(T. at 517-19). In addition, the court specifically instructed the jury that the prosecution was required to prove beyond a reasonable doubt that Petitioner, in fact, was the individual who committed the crimes alleged in the indictment. See (T at 522).  However, Petitioner's trial counsel did not request, and the Court did not provide, any specific instruction with regard to the standards for evaluating the identification testimony.

New York State courts have consistently held that "a [j]udge who gives a general instruction on weighing witness' credibility and who states that identification must be proven beyond a reasonable doubt has made an accurate statement of the law. No cognizable prejudice accrues to any party." People v. Whalen, 451 N.E.2d 212, 214 (1983); see also People v. Knight, 662 N.E.2d 256, 257 (1995); People v. Golden, 804 N.Y.S.2d 496, 498 (3d Dep't 2005); People v. Torres, 779 N.Y.S.2d 34, 35 (1st Dep't 2004); People v. Gomez, 764 N.Y.S.2d 109, 110 (2d Dep't 2003); People v. Singleton, 730 N.Y.S.2d 650, 651 (4th Dep't 2001).

In light of the foregoing state law precedent, trial counsel's failure to object to the charge or request a specific identification instruction does not rise to the level of unconstitutional ineffective assistance of counsel.  Moreover, trial counsel vigorously attacked the credibility and reliability of the eyewitness testimony both on cross-examination and during summation.  The jury, having had the opportunity to observe the witnesses and take their measure, evidently found their testimony credible.  Petitioner has failed to demonstrate any reasonable likelihood that additional instructions specifically related to eyewitness testimony would have changed the jury's verdict.  Accordingly, Plaintiff's claim in this regard should be denied.

### g.     1994 Forgery Conviction and Sentencing

21

Petitioner argues that his trial counsel was ineffective for failing to object to the use of a 1994 felony forgery conviction during sentencing that was overturned by the Appellate Division.   This assertion has no factual basis in the record.   In fact, during sentencing, Petitioner's trial counsel stated that the "conviction for forgery in the second degree was reversed by the Appellate Division."  (S at 3-4).   Thereafter, the prosecution specifically noted for the record its recognition of that fact when it stated:

> You Honor, I will just note for the record that the paragraph
> number two, the allegation of that forgery conviction was in
> fact reversed by the Appellate Division.  However, Mr. Adkins
> then pled guilty to another count of forgery in the second degree
> and was duly sentenced. . . and I intend to place that into evidence.

(S at 4).  Petitioner's trial counsel then noted his objection for the record to anything "beyond what's the statement that the People have provided me." (S at 5).

Therefore, Petitioner cannot factually support his assertion that his trial counsel failed to object to the use of his overturned conviction in the calculation of his sentence and, in fact, the record shows that said conviction was not used in the calculation of Petitioner's sentence.  As such, Petitioner is not entitled to habeas relief based upon this claim.

**2.     Law of the Case Doctrine**

Petitioner asserts that the trial court violated the "law of the case" doctrine with respect to its ruling on Sylvanna Mitrevska's testimony.[17]   Sylvanna Mitrevska was the victim, Calvin Moore's girlfriend, and was present when Petitioner attempted to rob Moore.

---

[17]This is Petitioner's fourth ground for habeas relief.  (Docket No. 1).

22

The "law of the case" doctrine is applicable in two circumstances: (1) a trial court may not reconsider or modify any of its prior decisions that have been ruled on by an appellate court in the same case, see Burrell v. United States, 467 F.3d 160, 165 (2d Cir.2006);and (2) a court should not reconsider its own decision within the same case without an intervening ruling on the same issue by a higher court. See United States v. Quintieri, 306 F.3d 1217, 1225 (2d Cir.2002).

This second branch of the doctrine "counsels against [trial courts] revisiting prior rulings in subsequent stages of the same case absent cogent and compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." United States v. Thorn, 446 F.3d 378, 383 (2d Cir.2006) (internal quotation omitted).

Section 710.30 of the New York Criminal Procedure Law requires the prosecution to provide advance notice to the defendant of its intention to present evidence that may be subject to a suppression motion, including prior identification of the defendant in cases where the police or prosecution arranged the opportunity for the witness to make the identification.  See People v. Smith, 149 Misc.2d 998, 1002, 567 N.Y.S.2d 577, 578) (N.Y.Sup.Ct.1991) ("Historically, CPL 710.30 , as it relates to identifications, was a legislative response to the problem of suggestive and misleading pretrial identifications involving, e.g., line-ups, show-ups or photographs for the purpose of establishing the identity of the criminal actor at trial. The statute sets forth a procedure to provide notice to a defendant who might otherwise be unaware that the People are in possession of such evidence and thus allows the defendant to test the reliability of the identification at a pretrial hearing[.]") (citing People v. White, 73 N.Y.2d 468, 474, 541 N.Y.S.2d 749, 539 N.E.2d 577

23

(N.Y.1989)).

In the present case, the trial court originally ruled that Mitrevska's testimony would be precluded based upon the prosecution's failure to serve §710.30 notice.  The court later changed that ruling after hearing attorney argument on the matter and allowed Mitrevska's testimony. See (T at 369).  Petitioner asserts that this violated the law of the case doctrine. However, the trial court had a compelling reason to change its ruling, as discussed further below; i.e., the trial court found that there was no police involvement in Mitrevska's identification of Petitioner.  The trial court stated that its previous ruling "may have been in error" and therefore, §710.30 notice[18] was unnecessary and the testimony should not have been been precluded. (T at 370).

As such, the trial court had a "need to correct a clear error" and therefore, the law of the case doctrine was not violated.  In any event, even if the trial court did infringe on the law of the case doctrine, Petitioner has failed to demonstrate how any such alleged infringement violated his rights under the Constitution or deprived him of a fundamentally fair trial.  Accordingly, Petitioner is not entitled to habeas relief on this claim.


   **3.**   **Wade Hearing**

Petitioner argues that he was deprived of a fair trial when the trial court refused to reopen the "independent source Wade hearing" to determine whether there was an independent source for Sylvanna Mitrevska's in-court identification of him.[19]

---

   [18]Under CPL §710.30, the People are only required to serve notice of a police arranged identification procedure.  See People v. Tas, 51 N.Y.2d 915 (1980).

   [19]This is Petitioner's fifth ground for habeas relief.  (Docket No. 1).

24

In <u>United States v. Wade</u>, 388 U.S. 218, 236-37, 242, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the Supreme Court held that an evidentiary hearing was required to determine whether a witness' in-court identification of a defendant had "an independent source," apart from post-indictment identification in a line-up at which the defendant's counsel was not present, or whether, in any event, the introduction of the evidence was harmless error. The function of a <u>Wade</u> hearing is not only to test the fairness of the pretrial identification procedure in order to determine whether there may be trial testimony of the procedure itself, but also to determine whether-- in the event the pretrial identification procedure was unduly suggestive-- the witness has an independent basis for testifying at trial that the defendant is the perpetrator.

Under New York law, a defendant who challenges the admissibility of a witness' identification of him or her is presumptively entitled to a <u>Wade</u> hearing even if, on a motion to suppress the allegedly impermissibly suggestive procedures, the defendant fails to assert specific facts establishing the deficiency. <u>See</u> <u>People v. Rodriguez</u>, 79 N.Y.2d at 453; <u>accord</u> <u>Alvarez v. Fischer</u>, 170 F.Supp.2d 379 (S.D.N.Y.2001).

However, suggestiveness was irrelevant in this case, as Mitrevska knew Petitioner prior to the incident, and was therefore unaffected by any police suggestion. <u>See</u> <u>People v. Vargas</u>, 118 Misc.2d 477, 481, 461 N.Y.S.2d 678, 681 (N.Y.Sup.Ct.1983) ("Where the defendant is known to and is a familiar figure to the witness before the crime, there is virtually no danger of a trial misidentification owing to a pretrial viewing, whether corporeal or by photo. Where the witness- either the victim or some other eyewitness-knows the defendant, suggestiveness is irrelevant [.]") (citing <u>People v. Tas</u>, 51 N.Y.2d 915, 434 N.Y.S.2d 978, 415 N.E.2d 967 (N.Y.1980); <u>People v. Gissendanner</u>, 48 N.Y.2d 543, 423

25

N.Y.S.2d 893, 399 N.E .2d 924 (N.Y.1979)).  Therefore, because Mitrevska knew Petitioner prior to the attempted robbery, there would have been no need to reopen the <u>Wade</u> hearing with respect to Mitrevska's testimony.

Further, as discussed below, Mitrevska's identification was not the product of a police arranged identification.  <u>See</u> (T at 369). Courts in this Circuit have held that a <u>Wade</u> hearing, or the reopening of a <u>Wade</u> hearing, is unnecessary where the identification evidence offered at trial is not the product of a pre-arranged police identification procedure such as a lineup, showup, or photographic array. <u>United States v. Pagan</u>, 829 F.Supp. 88, 91-92 (S.D.N.Y.1993), aff'd, 28 F.3d 102 (2d Cir.), cert. denied, 513 U.S. 904 (1994).

Under these circumstances, the fact that the state trial court did not reopen the <u>Wade</u> hearing does not provide a basis for federal habeas corpus relief. <u>Id.</u>; <u>see also</u> <u>James v. Senkowski</u>, No. 97 Civ. 3327(DLC), 1998 WL 217903, at *6 (S.D.N.Y. Apr. 29, 1998). As the district court stated in <u>Pagan</u>, "the absence of any police identification procedure whatsoever necessarily dooms any attempt to exclude a subsequent in-court identification allegedly derived from that procedure." 829 F.Supp. at 91; <u>see also</u> <u>Hall v. Alexander</u>, No. 98-CV-0320H, 1999 WL 299309, *2 (W.D.N.Y. Apr. 13, 1999) ("In this case, Sergeant Hernandez' identification testimony was based on information obtained during the execution of the search warrant. It was not the product of a lineup, showup, photo array, or some other procedure pre-arranged solely for the purpose of identifying or confirming the identification of the perpetrator. This is what the trial court found in its summary denial of petitioner's application for a pretrial identification hearing. Accordingly, petitioner is not entitled to habeas corpus relief on the ground that the trial court failed to conduct a Wade hearing to assess the reliability of the identification evidence offered at trial by Sergeant Hernandez.").

Finally, even if a constitutionally tainted identification were admitted at trial, its admission would still be subject to harmless error analysis. See Dunnigan v. Keane, 137 F.3d 117, 130 (2d Cir .1998); Brown v. Harris, 666 F.2d 782, 787(2d Cir. 1981). These cases instruct that the Wade hearing does not derive from mandatory constitutional rule but rather is a discretionary procedure grounded on the reliability of the identification evidence at issue. E.g., United States v. Finley, 245 F.3d 199, 203 (2d Cir.2001); Dunnigan, 137 F.3d at 129-30; United States v. Archibald, 734 F.2d 938, 943 (2d Cir.1984); Brown v. Harris, 666 F.2d at 785-86; Watkins v. Sowders, 449 U.S. at 349. Here, the trial court stated that Mitrevska seemed to be a credible witness, and her testimony was not based on any police identification procedure.  (T a t370).

As such, Petitioner's claim for habeas relief on this basis should be DISMISSED.


### 4.    Ineffective Assistance of Appellate Counsel

Next, Petitioner argues that his appellate counsel was ineffective because he (a) failed to raise issues related to People v. Trowbridge; (b) did not properly present Petitioner's speedy trial claims; (c) failed to raise CPL §710.30 issues; (d) failed to raise issues related to the "Law of the Case" rule with respect to Sylvanna Mitrevska's out of court identification; and (e) failed to raise issues related to his right to call witnesses.

As noted above, to prevail on an ineffective assistance of counsel claim, Petitioner must satisfy the two-part test set forth in Strickland. 466 U.S. 668. First, Petitioner must demonstrate that his "counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, he must show that counsel's deficient performance

prejudiced his defense. Id. at 692.

To demonstrate prejudice, Petitioner must establish that, but for counsel's errors, there is a reasonable probability that the outcome of the appeal would have been different. Id. at 694. Failure to satisfy either requirement of Strickland 's test is fatal to a claim of ineffective assistance. See id. at 696. ("[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one.").

Although Strickland's two-pronged test was originally formulated to judge trial counsel's performance, it applies in the context of evaluating the effectiveness of appellate counsel's representation as well.  Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir.1994).

To establish that appellate counsel failed to render effective assistance, a petitioner must do more than simply demonstrate that counsel omitted a non-frivolous argument, because appellate counsel is not required to raise all potentially colorable arguments. Id. (citing Jones v. Barnes, 463 U.S. 745, 754 (1983)).   As such, failure to raise an argument on appeal constitutes ineffective assistance only when the omitted issue is clearly stronger and more significant than those presented. See id. (citing Gray v. Greer, 800 F.2d 644, 646 (7th Cir.1986)).

To establish the requisite level of prejudice resulting from appellate counsel's shortcomings, a petitioner must establish that there is a reasonable probability that the omitted "claim would have been successful before the [state's highest court]." Id. (quoting Claudio v. Scully, 982 F.2d 798, 803-05 (2d Cir.1992)); see also People v. La Hoz, 131 A.D.2d 154, 158 (App.Div. 1st Dept.1987) ("The burden lies with those raising the issue to rebut the presumption that counsel has been effective. The mere existence of an unraised

28

issue will not suffice. A defendant must show that had the issue been raised a greater likelihood would exist that the judgment would have been reversed, or at least, modified. The right of appeal only guarantees review, not reversal."), appeal dism'd 70 N.Y.2d 1005 (N.Y.1988).

As noted above, Petitioner contends that his appellate counsel was ineffective for failing to raise various issues on appeal.  Those claims will be addressed in turn.

### a.    Trowbridge

As discussed above in Section III(B)(1)(b)(iii), Petitioner claims that various police officers gave bolstering testimony in violation of People v.  Trowbridge, 305 N.Y. 471 (1953).[20] As set forth above, in Trowbridge, the Court of Appeals held that a witness who heard an eyewitness make an identification of a defendant cannot testify as to what he or she heard because that would result in improper bolstering of the eyewitness identification. Petitioner argues that appellate counsel failed to present on direct review the issue of defense counsel's ineffectiveness for failing to object to this testimony.

However, Petitioner presented this argument in his motion for a writ of error *coram nobis* before the Appellate Division who denied his motion.  People v. Adkins, 12 A.D.2d 1205.  Therefore, Petitioner must show that the Appellate Division's finding was contrary to, or an unreasonable application of, clearly established Supreme Court law.   Petitioner makes no such assertions.  Rather, he reasserts the claim he made in his motion for writ of error *coram nobis*.

As set forth above, the eyewitnesses who testified in this case all knew Petitioner for

---

[20]This is Petitioner's tenth ground for habeas relief.  (Docket No. 1).

several years prior to the crime, and Calvin Moore testified regarding his previous relationship with Petitioner, and that he identified Petitioner as the perpetrator.  Whether the police officers stated that they heard the eyewitnesses identify Petitioner is of little consequence to Petitioner's trial. Petitioner's identity was not in question, but rather, the credibility of the testifying witnesses.  Because Petitioner has not asserted and cannot show that the Appellate Division's finding was contrary to, or an unreasonable application of, clearly established Supreme Court law, this claim for habeas relief should be DISMISSED.

      **b**        **Speedy Trial**

Petitioner contends that his appellate counsel erred in his presentation of Petitioner's "issue for dismissal on speedy trial grounds."[21] (Docket No. 1 at 7B).  Petitioner asserts that his appellate counsel failed to present the issue in the right context and asserted the same argument with respect to the May 17,2000 through May 25, 2000 time period.

However, as set forth above, Petitioner argued on direct appeal that his right to a speedy trial had been violated. (Appellant's Brief at 23-27). The Appellate Division reviewed the claim and found no violation of Petitioner's speedy trial rights under New York law stating that "'[W]here it is possible for the defendant to be arraigned and the trial to go forward within the six-month period, a pre-arraignment statement of readiness can be valid.'"People v. Adkins, 298 A.D.2d 991 (quoting People v Carter, 91 NY2d 795, 798).  The Appellate Division found that the statement of readiness can be made at the time of the indictment where the indictment is filed at least two days before the speedy trial period ends. Id.  Additionally, the Appellate Division stated that "there is no requirement that a defendant

---

[21]This is Petitioner's eleventh ground for habeas relief.  (Docket No. 1).

be present in order to establish readiness for trial." <u>Id.</u>

Although the Appellate Division did not address the Petitioner's claim that the period of time between May 17, 2000 and May 25, 2000 violated his speedy trial rights, Petitioner and the People argued that specific time period before the Appellate Division, and the appeals court still found the claim to be meritless. Although Petitioner argues that had his counsel presented this claim differently, there would have been a different outcome, it is unclear from Petitioner's Memorandum of Law and Petition how presenting this argument differently would have resulted in a different outcome. Petitioner simply asserts that it would have. However, because there is no merit to Petitioner's underlying speedy trial claim, appellate counsel could not have been ineffective in his presentation of the claim to the Appellate Division. As such, this claim for habeas relief should be DISMISSED.

### c    §710.30 Claim

Petitioner next argues that his appellate counsel was ineffective for raising the prosecution's failure to comply with CPL §710.30.[22]   Section 710.30 provides that the prosecution is required to serve notice to a defendant of a police arranged identification procedure. <u>See</u> <u>People v. Tas</u>, 51 N.Y.2d 915 (1980). Specifically, Petitioner contests the identification of him by Sylvanna Mitrevska required CPL §710.30 notice.

It is unclear from the record why Petitioner is insisting that appellate counsel was ineffective for not raising this issue with respect to Mitrevska's identification, when the trial court specifically stated, after hearing argument from both sides, "there was no police procedure involved in that [identification]." (T at 369). <u>See</u>, e.g., <u>People v. Vargas</u>, 118

---

[22]This is Petitioner's twelfth ground for habeas relief. (Docket No. 1).

Misc.2d at 481. Section 710.30 of the C.P.L. is, by its terms, limited to "police arranged confrontations." N.Y.Crim. Proc. Law § 710.30; see also People v. Gissendanner, 48 N.Y.2d at 552; People v. Berkowitz, 50 N.Y.2d 333, 338, n. 1, 406 N.E.2d 783, 428 N.Y.S.2d 927 (N.Y.1980).

The facts do not support Petitioner's assertion that there was a police arranged identification and thus, the prosecution did not have to comply with the strictures of C.P.L. § 710.30 with respect to Mitrevska's testimony . See, e.g., People v. Zambrano, 2003 WL 22922437, at *8 (N.Y.Sup.Ct. Nov. 24, 2003) ("The evidence introduced at the hearing establishes that the police did nothing to 'arrange' identifications of any of the defendants by these witnesses. The 'point out' identifications which did occur were the spontaneous product of an accidental encounter between the witnesses and the suspects. There being no governmental action involved there exists no basis for the suppression of any of the identification testimony [ .]") (citing People v. Dixon, 85 N.Y.2d 218, 623 N.Y.S.2d 813, 647 N.E.2d 1321 (N.Y.1995), People v. Capel, 232 A.D.2d 415, 648 N.Y.S.2d 327 (App.Div. 1st Dept.1995).

Accordingly, because there is no basis in the record to establish police involvement in Mitrevska's identification of Petitioner, §710.30 notice of her testimony was not required. As such, appellate counsel was not ineffective for choosing not to raise this issue on appeal and this claim should be DISMISSED.

### d.   "Law of the Case"

In Petitioner's thirteenth ground for habeas relief, he asserts that his appellate counsel was ineffective for failing to raise issues of "law of the case" doctrine errors.  As set forth above, the trial court did not violate the law of the case doctrine because it had a

compelling reason to change its ruling.   Because there was no police involvement in Mitrevska's identification of Petitioner, §710.30 notice was unnecessary and her testimony could not have properly been precluded.   As such, Petitioner can make no showing that the Appellate Division's decision in this regard was contrary to, or involved and unreasonable application of, Supreme Court precedent.   Therefore, this Court finds that Petitioner is not entitled to habeas relief on this basis.

### e.    Right to Call Witnesses

In Petitioner's fourteenth ground for habeas relief, he asserts that his appellate counsel was ineffective for failing to raise a claim with respect to the trial court's refusal to adjourn the trial in order to allow defense counsel to subpoena Officer Colavita, which he claims deprived him of his right to present a defense.  (T at 405). Defense counsel elicited testimony from Mitrevska that she did not know who fired the shot into the room, and that she did not tell Officer Colavita on November 27th that it was Petitioner who came to the room that night. See (T at 379-381).

Defense counsel asked Mitrevska whether she told Officer Colavita that she saw Petitioner at the Econo Lodge.  (T at 380).  She responded "[h]e didn't ask me so I didn't tell him."  (T at 380).   Defense counsel then asked if he could resubpoena Officer Colavita to establish that she did not state to him who fired the shot or that Petitioner was at the Econo Lodge.  (T at 403).  The court stated that defense counsel had the right to subpoena Officer Colavita, but that the trial would not be adjourned for him to do so.  (T at 405).  Petitioner asserts that this deprived him of his right to call witnesses, and that appellate counsel was ineffective for failing to raise this issue on appeal.

"The rights to confront and cross-examine witnesses ... in one's own behalf have long

been recognized as essential to due process." Chambers v. Mississippi, 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); see also Washington v. Schriver, 255 F.3d 45, 56 (2d Cir.2001) ("The right to call witnesses in order to present a meaningful defense at a criminal trial is a fundamental constitutional right secured by both the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment.").

However, the Supreme Court has explained, "[n]ot every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel." Morris v. Slappy, 461 U.S. 1, 11, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) (citing Chambers v. Maroney, 399 U.S. 42, 53-54, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970)). The decision of whether to grant or deny a continuance is "a matter 'traditionally within the discretion of the trial judge.' " Drake v. Portuondo, 321 F.3d 338, 344 (2d Cir.2003) (quoting Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964) and citing Morris v. Slappy, 461 U.S. at 11, 103 S.Ct. 1610). "[O]nly an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the [Constitution]." Morris, 461 U.S. at 12, 103 S.Ct. 1610 (quoting Ungar, 376 U.S. at 589, 84 S.Ct. 841); accord Drake, 321 F.3d at 344.

Here, the trial court's denial of the request for a continuance was in no way "unreasoning" or "arbitrary." The testimony that defense counsel sought to have introduced through Officer Colavita's testimony, he received through Mitrevska. Therefore, while the trial court advised Petitioner that it was his right to subpoena Officer Colavita, the trial court did not violate Petitioner's right to call witnesses by refusing to adjourn the trial in order for Petitioner to secure Colavita's testimony. This is especially the case in light of the fact that Colavita testified before the court, at which time defense counsel had the opportunity to

34

examine him with respect to Mitrevska's statement.

In addition, Petitioner has failed to show that a continuance was necessary. There is no showing that Officer Colavita was unavailable for immediate recall or subpoena, or that he was refusing to reappear without a subpoena.  Rather, it appears that, defense counsel simply opted not to subpoena Officer Colavita because he could not get an adjournment to do so.  (T at 405).  Therefore, there is no way of knowing whether an adjournment was actually necessary.  As such, the claim is meritless and Petitioner's appellate counsel was not ineffective for deciding not to raise this issue on direct appeal.

Accordingly, because Petitioner has failed to show that the Appellate Division's finding with respect to this claim was either contrary to, or an unreasonable application of, Supreme Court law, this ground for habeas relief should be DISMISSED.

### 5.   **Apprendi Issues**

Petitioner argues that his trial counsel and appellate counsel were ineffective for failing to object to his sentence as a persistent felony offender as violating Apprendi.[23] Petitioner also asserts his trial and appellate counsel were ineffective due to their failure to object to or raise the issue of a 1998 felony forgery conviction being used "in place of an [sic] 1994 felony Forgery conviction." (Docket No. 1 at 7C,15).

As an initial matter, Respondent argues that Petitioner's Apprendi claims are unexhausted for his failure to raise them before the state courts.  (Docket No. 11 at 28-29). However, since the time that Respondent submitted his Memorandum of Law, these

---

[23]Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). This is Petitioner's fifteenth ground for habeas relief.

proceedings were stayed and Petitioner returned to exhaust his remedies before the state courts.  Thus, these claims are now properly before this Court. (Docket No. 17, 32 at 48, 50).

###     a.     New York's Persistent Felony Offender Statute

New York's persistent felony offender statute defines a "persistent felony offender" as "a person, other than a persistent violent felony offender as defined in section 70.08, who stands convicted of a felony after having previously been convicted of two or more felonies," N.Y. Penal Law § 70.10(1).  The statute further defines the circumstances under which a sentencing court may enhance the defendant's sentence, N.Y. Penal Law § 70.10(2).  The second subsection provides as follows:

> When the court has found, pursuant to the provisions of the criminal procedure law, that a person is a persistent felony offender, and when it is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and lifetime supervision will best serve the public interest, the court, in lieu of imposing the sentence of imprisonment authorized by section 70.00, 70.02, 70.04 or 70.06 for the crime of which such person presently stands convicted, may impose the sentence of imprisonment authorized by that section for a class A-I felony. In such event the reasons for the court's opinion shall be set forth in the record.

N.Y. Penal Law § 70.10(2).

In the present case, Petitioner contends that his sentence under New York's persistent felony offender statute was unconstitutional in light of <u>Apprendi</u>, and its progeny. In particular, Petitioner argues that his penalty was improperly enhanced based on the judge's finding facts without proof beyond a reasonable doubt–namely, that the history and character and the nature and circumstances of his criminal conduct justified a finding of persistent felony offender. Further, Petitioner argues that his trial and appellate counsel were unconstitutionally ineffective for failing to raise this claim on appeal.

In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348.   The Apprendi court held that it was unconstitutional to allow a judge to impose an enhanced sentence based upon the finding of a specific fact, unless that fact had been determined by a jury through proof beyond a reasonable doubt. Id.  On June 24 2002, the Supreme Court issued Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), which further considered the implications of Apprendi .  In Ring, the court struck down Arizona's sentencing scheme, which allowed for the death penalty to be imposed if the sentencing court determined that certain "aggravating circumstances" were present. The Supreme Court ruled that "[b]ecause Arizona's enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense,' the Sixth Amendment requires that they be found by a jury." Id. at 609, 122 S.Ct. 2428 (quoting Apprendi, 530 U.S. at 494 n. 19, 120 S.Ct. 2348). Thus, Ring clarified the holding of Apprendi and explained that a regime providing for enhanced sentences based upon the presence of several specified facts was unconstitutional unless those facts had been determined by a jury. Ring's holding was further developed in Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004)(decided June 24, 2004), with the Supreme Court explaining that any additional fact-finding, even generalized findings, such as "substantial and compelling reasons justifying an exceptional sentence," require a determination by a jury prior to a sentencing enhancement.  United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005),  followed Blakely and applied its holding to the Federal Sentencing Guidelines.

37

In the present case, Petitioner's conviction became final on March 5, 2002, *i.e.*, ninety days after the Court of Appeals denied his motion for leave to appeal.  As such, because Ring, Blakely and Booker were decided after that date, they are not relevant for purposes of deciding whether Petitioner's sentence violated clearly established federal law as determined by the Supreme Court.

The Second Circuit has indicated that the relevant time for purposes of determining what constituted clearly established federal law is either "the time [the petitioner's] state-court conviction became final" or "the time of the relevant state-court decision." Brown v. Greiner, ("Brown I") 409 F.3d 523, 533 n. 3 (2d Cir. 2005). Under either standard, this Court's review of the merits of Petitioner's claims must be limited to Apprendi and any preceding cases, but cannot include an analysis of subsequent decisions such as Ring, Blakely and Booker.  See Brown I, 409 F.3d at 533 n.3 ("The universe of 'clearly established Federal law, as determined by the Supreme Court of the United States' for purposes of this appeal is therefore limited to Apprendi and the cases that preceded it."); cf. Brown v. Miller, ("Brown II"), 451 F.3d 54, 57 (2d Cir. 2006) ("The question presented here is whether, in sentencing Brown as a persistent felony offender pursuant to New York Penal Law § 70.10, the state court unreasonably applied Ring[24] and the cases that preceded it, as understood at the time.").

In Brown I and Brown II, the Second Circuit held that New York's persistent felony offender statute was not contrary to or an unreasonable application of federal law, as it

---

[24] In Brown II, petitioner's conviction became final after Ring was decided but before the Supreme Court's rulings in Blakely v. Washington and United States v. Booker, 543 U.S. 220. Brown II, 451 F.3d at 5 n.1.

existed after Apprendi and Ring, but before Blakely was decided.

As the Second Circuit explained in Brown II, "Apprendi involved statutes that required judges to find specified facts (*i.e.*, judicial factfinding of the elements of the crime) in order to impose an enhanced sentence, not the kind of 'amorphous' determination required by New York's statute (*i.e.*, a determination of the appropriateness of enhanced sentencings)." 451 F.3d at 59.[25]

The claims presented in this case fall squarely within the Second Circuit's decisions in Brown I and Brown II, which held that the persistent felony offender statute was not unconstitutional under clearly established federal law, as defined by the Supreme Court in Apprendi and preceding cases.

As such, given the binding precedential authority with respect to this matter, this Court finds that Petitioner's claim that his sentence under the persistent felony offender statute was contrary to or an unreasonable application of clearly established federal law, as it existed at the relevant time, is plainly without merit.  See, e.g., Woods v. Poole, No. CV-03-5708, 2007 WL 4166042, at *1 (E.D.N.Y. Nov. 19, 2007); Alston v. Woods, No. 04-CIV-8017, 2005 WL 3312818, at *4 (S.D.N.Y. Dec. 8, 2005); Francishelli v. Potter, No. 03-CV-6091, 2007 WL 776760, at *9 (E.D.N.Y. Nov. 19, 2007).  Further, the argument that trial and appellate counsel were unconstitutionally ineffective for failing to raise an Apprendi claim on appeal is likewise plainly without merit. See Cephas v. Ercole, No. 07-Civ-6048, 2008 WL 1944837, at *4 n. 4 (S.D.N.Y. Apr. 29, 2008); James v. Artus, No. 03-Civ-7612, 2005 WL

---

[25]The New York Court of Appeals has also held that the persistent felony offender statute survives scrutiny under the Apprendi standard.  See People v. Rivera, 5 N.Y.3d 61, 800 N.Y.S.2d 51, 833 N.E.2d 194 (2005); People v. Rosen, 96 N.Y.2d 329, 728 N.Y.S.2d 407, 752 N.E.2d 844 (2001).

859245, at *16 (S.D.N.Y. Apr. 15, 2005).

Accordingly, Petitioner's claims for relief based on Apprendi issues should be DISMISSED.

### b.      1998 Forgery Conviction

Next, Petitioner claims that his trial attorney failed to object to the prosecution's use of a 1998 felony forgery conviction in place of a 1994 felony forgery conviction for purposes of determining his status as a persistent felony offender.  Petitioner does not offer any further factual background for this claim or why this was in error.  However, construing the pro se petition liberally, this Court will review the claim as asserted in Petitioner's motion for a writ of error coram nobis.  In his coram nobis motion, Petitioner asserted that the people did not give him notice of their intent to use his 1998 forgery conviction, inhibiting his ability to contest it.

The Appellate Division found this claim to be without merit, therefore, habeas relief is not warranted unless it can be shown that the Appellate Division's determination was contrary to, or an unreasonable application of, Supreme Court law.  Petitioner has made no such assertion.  Nor can he, as Petitioner does not even allege in his coram nobis motion that the 1998 conviction was in any way invalid, or ineligible to be used in the calculation of his sentence.  As such, Petitioner cannot establish that his trial or appellate counsel were ineffective for failing to object to or raise this claim.  Accordingly, this part of Petitioner's fifteenth ground for habeas relief should also be DISMISSED.

### 6.      Persistent Felony Offender Status

Petitioner also asserts that the sentencing court failed to place its reasons for sentencing on the record in violation of his rights.[26]  Petitioner raised this issue on direct appeal before the Appellate Division who found the sentencing court "properly sentenced defendant as a persistent felony offender."  People v. Adkins, 298 A.D.2d at 991.  The appeals court went on to note that "the reasons which compelled the imposition of the sentence are obvious from the record, and we therefore need not vacate the sentence and remit the matter for resentencing as a consequence of the court's failure to state on the record why in its view defendant's history and character warranted persistent felony offender treatment.  Id. at 991-92 (internal quotations and citations omitted).

Therefore, because the Appellate Division made a finding on the merits with respect to this issue, in order to obtain habeas relief, it must be shown that the Appellate Division's decision was contrary to, or an unreasonable determination of the facts in light of, clearly established Supreme Court precedent.

A state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. at 413.  Petitioner does not assert that there is any federal law mandating a sentencing court to place its reasons for enhanced sentence on the record.   Rather, Petitioner asserts that the holding of the Appellate Division is "unreasonable, flatly contradicted by both statutes, by New York case law, and by procedural history of this case."  (Docket No 32 at 35).  This bald assertion is

---

[26]This is Petitioner's sixteenth ground for habeas relief.  (Docket No. 1).

41

insufficient to establish that the Appellate Division's decision in this regard was contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, Petitioner's request for habeas relief with respect to this claim should also be DISMISSED.

## IV. CONCLUSION

For the reasons stated above, the Court recommends Fred Adkins' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied and that the Petition be dismissed.  Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that a certificate of appealability not issue.  See 28 U.S.C. § 2253(c)(2) (1996).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge


DATED:      June 24, 2008

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

June 24, 2008

Victor E. Bianchini
United States Magistrate Judge